Good morning, everyone, and Judge Hamilton, Judge Jackson-Ikumi, and I want to wish everyone in the courtroom a wonderful, healthy new year. We're very happy to have you all here today, as we always are. And so we will begin, I will call the first case, and that case is number 23, 1754, Word Seed Church v. Village of Hazel Crest. Good morning. Good morning, Your Honors. John Mauck, representing the Word Seed Church. As Your Honors will note from the briefs, this case involves a small church, 10 members, that's been in existence about 12 years, and has searched hard for a property to have a permanent location. However, the implications of how you rule here probably, if you rule in favor, will affect thousands of churches and millions of Americans. How will it affect your client, if we were to rule in your favor? Excuse me? How will it affect your client, if we were to rule in your favor? Our client will have nominal damages, legal fees, and costs. Our client has waived the equitable relief because we found, finally, another property, and we filed with the courts that we do not need injunctive relief against Hazel Crest anymore. Mr. Mauck, why is this a live controversy, given that the church has purchased property elsewhere, as you just noted, and no longer seeks to buy property and establish a house of worship in Hazel Crest? They don't have a case at this point. They had a case, and they were damaged when they were denied an ability to buy a property back when they were searching with Hazel Crest and before they filed suit. Your own excerpt testified that there were no properties available in Hazel Crest that could accommodate what you expected to be a 120-member church. Correct? That testimony is quoted out of context. The question was asked, what would you ideally like? But the complaint and the opening brief on page 10 has a picture of the building we wanted to buy. It clearly couldn't handle 120 people, but it had adequate parking, it was adequately priced, and it was in a business zone. So we had standing, except churches were not allowed there, and they had a specific ordinance, Your Honor, that said no worship is allowed in any building designed for business. So we had standing, and that's why we challenged, and Judge Lyman Weber initially ruled that we had standing. Standing and mootness are two distinct concepts, so let's return to mootness, and let's go with you. You say that your clients have nominal damages. Can you explain to us, if you look at Supreme Court case law, like Usa Bunim, and I may be pronouncing that incorrectly, nominal damages can make a case survive a mootness challenge, but you have to be able to show a completed injury. So a past completed injury. Can you explain to us how your clients have suffered a completed injury when they did not proceed with purchasing? We were told, you're not welcome. You're not allowed here unless we give permission for you to come in and worship. That's the injury right there. You're out unless we say you're in and exercise our discretion to allow you, and this is what burdens these small churches, because whether it could be racial, or because they speak in tongues, or because they're Muslim, they have to come into a city like Hazelcrest and persuade them, and persuade the seller to sell to them, because the seller... Well, forgive me, but 15 churches exist in Hazelcrest at the time of the moot. And having looked at most of those churches, they all date back 20, 30, 50 years to times when zoning was easier, and maybe they got special use permits sometimes. We don't know how many were turned down, but the question isn't whether there are 16 churches. The question is, how can a new church be established? Do they have to go worship at an existing church? Can't they start their own? Every case is taken on its own facts, Mr. Mell. I mean, could you just stay with your facts? Could you say that again, Your Honor? Yes. You see, I mean, every single case of a church, you know, trying to be in Hazelcrest depends on the facts. We've got to stay with your facts, not all the facts in America, or all the facts in Illinois, or... Okay, well, they had a building, they visited the building, the building was affordable, and there was a legal barrier, invisible but every much as a ghetto wall, that said you're not allowed in here because there's no worship allowed in any building designed for business, and there's no churches allowed in any B2 zone, and there's no churches allowed, and when I say allowed, I mean permitted use, anywhere. So that's the injury, it's the rejection right there that they faced, and that's when they were injured, and that's when we sought court assistance to be allowed to... As I understand it, your clients visited this one building once. Yes. Never made contact with the seller? Made contact with us, then. Right, but not with the seller. Right. No direct contact with the city, with the village government, correct? They contacted the realtor, who had contact with the seller, but not direct contact. Okay, so suppose we had an interested buyer who simply drove past the building, would that be enough for an injury? That gets closer, I mean that's... That's not... That's a fair... Suppose you just read an ad in the newspaper and said, maybe we'd like to go there, would that be enough? You have to figure price, you have to figure location, and location for your congregation, can they meet there, you have to... And these were all suitable. You have to look at parking and surrounding uses, and they were all suitable. They could afford it. Their next step is to go to an attorney, and I'm not going to advise them to spend thousands of dollars when you have two ordinances that explicitly prohibit their use. They couldn't go any further. Unless they get a special use permit, right? No, special uses were not allowed at that time, and... Not in B1, B2, right? They weren't allowed in the B2 zone. So, I understand you not to be challenging the B1, B2 zoning any further, is that right? We're challenging the entire zoning code that did not allow churches anywhere, and since this case was filed, the city has amended its code to allow churches in B1 and B2, provided only that they're renting, not that you can buy there. Okay. So... Mr. Mauck, can I ask you, do you agree that we are limited in this appeal to considering the denial of your 60B motion? That you're considering? That we are limited, our jurisdiction in this case, is limited to the denial of your 60B motion, correct? I believe so. And that's subject to an abuse of discretion review, agreed? Yes, massive abuse of discretion, Your Honor. That's not my question, but... Yes. And... I was a little concerned when I read in your reply brief that you thought standing and waiver were technical matters. Can you elaborate on that? Well, maybe that was not the right word, but there's clearly a case in controversy here, Your Honor. Well, that is the question. But, okay. I'm going to reserve five minutes for rebuttal. All right, and we thank you. And we're going to ask Mr. Lemley to please come up. Good morning. Good morning, Your Honors. My name is Brandon Lemley. I represent the Appley, the Village of Hazelcrest in this matter. There are two overarching issues in this case. The first is standing. And specifically, whether the case has become moot. And secondly, it's the issue of whether there was abuse of discretion on the denial of the Rule 60B motion. Because this case is jurisdictionally limited to Rule 60B, assuming there is standing. The primary issue from our perspective is standing. The district court, when he addressed standing, it was on the denial of the motion for a preliminary injunction. At that point in time, the court held solely that there was standing to mount a facial challenge based on a future threat of harm in a pre-enforcement facial challenge to the statute. The Supreme Court in TransUnion in the past couple of years has made extremely clear that cases dealing with future injury only allow standing with respect to injunctive relief. Yet here we are. Plaintiff has purchased property, has said it's no longer seeking injunctive relief or declaratory judgment. In our eyes, this has mooted the entire case. The question remains whether or not there's standing for nominal damages. As you know, and I'm going to butcher the name of the case, the Supreme Court has said that you still have to have a concrete injury and you have to have traceability before nominal damages satisfy redressability. And here, the facts are clear that the church never took any effort, never took any steps to lead to a concrete injury. They went through one property, one time, they spoke with their attorney, and then they sued. That's it. And that one property was in a business district, which then on summary judgment, the church turned around and conceded to the entry of summary judgment on the equal protection claim, which is the only claim on appeal in business districts. That left them, or leaves the only issue on appeal as being whether or not there's an equal protection claim in residential and manufacturing districts. The evidence is that the church never considered any property whatsoever in manufacturing districts, looked at, considered one residential property that they never toured and decided not to pursue it because it had already been sold. Mr. Lindley, forgive me for interrupting, but could you possibly elaborate on the issue of whether there was an existing parcel in the village that could accommodate 120 person congregation? I mean, was that a point limited to available parcels of land or all existing parcels within the village? Your Honor, my understanding is that this evidence comes from plaintiff's own expert who testified that when he spoke with the, I believe it's Pastor Washington, the pastor for the church. Even though the church only had, and I think in his deposition he said there were only six members, that Pastor Washington wanted to have a sufficiently sized church to accommodate 120 person congregation. It was the plaintiff's own expert who looked at the property that was available within Hazelcrest and concluded that there was no suitable property that could accommodate the needs of the congregation with 120 member congregation. And even just now in oral argument, it seems like counsel has conceded that the one property in a commercial zone that has a photograph in the opening brief itself wasn't large enough to accommodate 120 person church. Counsel has talked about market forces, that you have to find the right property in the right location at the right price, but in this case, the location wasn't limited to Hazelcrest. The church was looking all throughout the south suburbs for a property. They didn't care if it was in Hazelcrest, Flossmoor, Homewood, or where they ultimately ended up in an unincorporated area. Further, the evidence shows that when they were able to find the right property at the right price, the exact same type of ordinance that Hazelcrest has in place didn't stop them from pursuing it. In Flossmoor, they encountered an identical ordinance. It provided that in business districts, churches weren't allowed. It provided that in residential districts, they were allowed as a special use permit. And yet, when they found the right property in Flossmoor at the right price, the church proceeded to apply for rezoning to residential and then sought special use. That process worked in their favor. The deal ultimately fell apart because the seller refused to pay back taxes. But in his deposition, Pastor Washington said, you know, if I can find the right property in Hazelcrest, I would go through the same process in Hazelcrest. All of this shows that Hazelcrest's ordinance did not stop the church from locating in Hazelcrest. Rather, it's the market forces behind all of this. The lack of available property that meets their needs, the fact that they couldn't find the right property at the right price. One point, and it's not in my factual background in our brief, Your Honors, and I apologize for that. Pastor Washington testified at his deposition that his maximum price to purchase property for the church was $320,000. And that was the same price for the one property that's been mentioned in the business district. It was at the absolute max of their budget. If anything had gone wrong for the church, if the church had any additional expenses, which are always at issue in purchasing property, that deal could not have gone wrong. It sounds like that would take us pretty far outside this record then. It's within the record, Your Honor, but I apologize that it's not included in the briefing. With respect to the Rule 60B issues, this is largely an attempt to rehash the arguments that were presented on summary judgment. It's simply not a proper use of Rule 60B. There was an issue with respect to the 2008 amendment, but as Your Honor pointed out, counsel conceded to the entry of summary judgment in business districts based on the applicability of the 2008 amendment in this Court's River of Life opinion that affirmed the validity of Hazel Crest's zoning ordinance. Mr. Limley, I have to say, it is a little odd to encounter a local government ordinance that apparently nobody knew about, that was not public. So can you enlighten us on the status of the secret ordinance from 2008? Not a secret ordinance, Your Honor. It was passed, legislated, it was published after it was adopted. So somebody made their way through all the minutes, they would find that it had passed. Correct, Your Honor. The issue is that the ordinance, the village has on its website the codification code of ordinances. And for some reason, after the 2008 amendment was adopted, it never made it to the code of ordinance. What do you mean by some reason? Because that was my question as well. Why did the village not publish the 2008 amendment? I do not have the answer, Your Honor. It is not in the record. I do not know the answer. Plaintiff was given the opportunity, district court judge gave the plaintiff the opportunity to go and pass this discovery. And it never happened. You know, when we got to summary judgment, the validity of the 2008 ordinance was simply accepted. And the church conceded to the entry of summary judgment on its business district claims based on the 2008 amendment. So unfortunately, I know it's not a satisfying answer. But the honest answer is that I do not know why it did not make it to codification. Well, honest is always better than almost anything else, right? It is, it is, Your Honor. We've got a bit of a puzzle here, though. Because the district judge thought there was standing, certainly at the time he denied, or he granted summary judgment, right? And then we get the Rule 60B motion, and while that's pending, the church finds its other spot. It doesn't want, it doesn't need injunctive relief any further. And I guess one of the questions is, what obligation does a court have to reconsider subject matter jurisdiction when considering a 60B motion? After a decision has been rendered on the merits? You know, Your Honor, the best response I have is that every case I've ever read, whether from this court or the Supreme Court, has said that you have to assure yourself that there's subject matter jurisdiction on every claim at every stage of litigation. Yes, but there actually is a different rule or principle that applies when you're talking about a collateral challenge. After there's a final judgment, as there was in this case. And I'll paraphrase it roughly as saying, you go back and revisit subject matter jurisdiction on a collateral challenge only if there was an egregious lack of subject matter jurisdiction beyond reasonable debate. So it's, the way this is teed up for us, it's a bit of a puzzle and perhaps an application of that principle. And Your Honor, I apologize that I'm unfamiliar with the principle. Well, your instincts are sound, generally. That's going to apply to 99.9% of the cases. This may be in the 0.1% where we're dealing with a collateral challenge to the judgment on the merits. And you're raising questions about subject matter jurisdiction of that judgment. Well, even if, Your Honor, even if there is subject matter jurisdiction, at least to consider the Rule 60B matter, the denial of the Rule 60B motion. I think it's clear that on this record that the district court judge did not abuse his discretion in denying the motion under Rule 60B. If there's any further questions, I'm happy to answer them. But if not, we would ask that you affirm the denial of the Rule 60B. And if in fact there's no subject matter jurisdiction, it seems like the appropriate course would be to dismiss due to the lack of jurisdiction. Thank you, Your Honor. Thank you very much, Mr. Lumley. Okay, Mr. Malk, we've got four minutes and 56 seconds. Thank you, Your Honor. I have four points in rebuttal. In the Zug-Lunam case, there was damage in that the evangelist had not been allowed to preach in the area of the college and that the Supreme Court found sufficient. The second point, counsel mentioned that we had to look at the south side in general and the different places where we could have located. But the Supreme Court in Shad versus Mount Ephraim, which was a 1980s case, 1985, I believe, 452 U.S. 61, 1981, excuse me. There was live nude dancing in Mount Ephraim and they were ticketed because they didn't have the zoning. The case went to the Supreme Court. The defendant, a live nude dancing establishment, said that we'd have no place where we're allowed. The Supreme Court said it's a First Amendment use. And rejected Mount Ephraim's argument that they could go next door or to any other community. The Supreme Court said, no, it's a First Amendment use. It must be allowed somewhere. And they voided the ticket. We think that that's, by extension, applicable to a right to worship. The third point is counsel said the Flossmoor Ordinance was identical. A key omission. Flossmoor Ordinance did require special use and the church went through that process and spent a bunch of money getting the zoning. But Flossmoor did not have an antagonistic law that said you can't worship in any buildings owned or designed for business. So it was not identical. In fact, Flossmoor, and this brings up the fourth point, I think we can deduce why there was a secret ordinance. We can't say for sure. But there's a pattern of hostility towards church uses. When a River of Life case was decided by this court, actually by Ahn Bach, which held that if you have not-for-profits, you've got to allow churches. So what did Hazelcrest do? They passed what we call the secret ordinance and eliminated most of the not-for-profit. Instead of saying, okay, we're going to free up churches, they eliminated most of the comparators. And they had this antagonistic law which said don't even try in a business district. And then when this case was filed and they realized they'd done things wrong, as I mentioned before. So I've got a very simple question for you. The 2008 amendment is what you're worried about here, right? That's what Judge Rovner had asked about the 2008 amendment. And our River of Life decision was in 2010? I don't think so. Yes. Okay. Then I'm wrong. So I don't think one caused the other. Okay. Then I'm wrong on that. Mr. Malk, Judge Leinenweber, in denying that request for a preliminary injunction, invited you to make arguments about the ongoing validity and enforcement of that amendment in later briefing. You chose not to make such an argument in the briefing on the cross motions for summary judgment. So why didn't you waive any such argument? The... The 2008 amendment. You were actually invited and did not respond. That's called waiver. I don't remember what our reasoning was at the time, Your Honor, but I do know that the surviving ordinance, which allowed adult theaters, community centers, and libraries as permitted uses, was an equal protection denial in that each of those uses had zones where they were allowed as permitted uses, libraries were permitted uses, adult theaters were permitted, and I think community centers were special uses in a business district. So the judge in motion to reconsider gave what we feel faulty analysis on each three of those comparators. He said they weren't comparators because adult theaters are First Amendment use. I wonder what churches are. And he's... Mr. Welk, I'm going to ask you to wrap up, please. Okay. Thank you, Your Honor. Okay. Did you have a last thought? When I said wrap up, I meant if you had a last thought, of course we'll listen. Okay, well, the last two thoughts are that libraries are mentioned as comparators in the DeGruyer case, Seventh Circuit has said libraries and churches should be treated the same and community centers. There are many cases we can submit a brief where they're considered comparable to churches and they were given special use in the business district where churches were not given special use. Thank you, Your Honor. Well, thank you very much. Thanks to both Mr. Malk, Mr. Lemley. The case will be taken under advisement. We're going to go.